UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **PATRINA COULON** | **CASE NO. 6:21-CV-00019** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SCHOOL BOARD OF ST MARY PARISH ET AL** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 4] filed under Federal Rule of Civil Procedure 12(b)(6) by defendants St. Mary Parish School Board and Superintendent Teresa Bagwell. Doc. 4. Plaintiff Patrina Coulon opposes the motion. Doc. 6.

### I.
#### BACKGROUND

This suit arises from plaintiff's employment by the St. Mary Parish School Board ("School Board"). Plaintiff, an African-American woman, alleges that she was subjected to sexual harassment by her female colleagues while on assignment as a special education paraprofessional, and that she was transferred to another department and then fired on account of her race and in retaliation for complaining about this harassment. Doc. 1. She filed suit in this court, raising claims of race- and sex- based discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act, as well as violations of the Louisiana Employment Discrimination Law, the Louisiana Whistleblower Protection Law, and the implied duties of good faith and fair dealing under Louisiana

contract law. *Id.* As defendants she named the School Board, Superintendent Teresa Bagwell, Doe Defendants 1–10, and ABC Insurance Companies. *Id.*

The School Board and Bagwell now bring this motion to dismiss, asserting that (1) plaintiff's claims for discrimination and retaliation fail, because she has not alleged adverse employment action or reprisal, (2) the Title VII claims against Bagwell in her individual capacity must be dismissed, because Title VII does not apply to individuals, (3) to the extent any claim is made against Bagwell in her official capacity, it must be dismissed because it is duplicative of the claims made against the School Board, and (4) Bagwell is entitled to qualified immunity for any other individual capacity claims brought against her.[1] Plaintiff opposes the motion, but concedes that there is no individual liability against Bagwell under Title VII and that the official capacity claims should be dismissed to the extent that the School Board admits it is the proper defendant.

## II.
## LAW & APPLICATION

### A. *Legal Standards*

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In*

---

[1] Defendants do not move for dismissal of the claims made against Does 1–10 or ABC Insurance Companies at this point, but instead reserve their objections until actual parties are substituted for these placeholders. Doc. 4, att. 1, p. 1 n. 2.

*re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

When reviewing a 12(b)(6) motion, the court focuses on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice as well as documents referred to in the complaint and central to the plaintiff's claims. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished); *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Pursuant to Federal Rule of Civil Procedure 12(d), a motion to dismiss filed under Rule 12(b)(6) may be converted into a motion for summary judgment under Rule 56 where it relies on matters outside of Rule 12(b)(6)'s scope, as long as the court gives the parties a "reasonable opportunity to present all the material that is pertinent to the motion." *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (quoting Fed. R. Civ. P. 12(d)). Here the defendants also attach evidence in support of their motion and request that the court consider it under Rule 56 in the event that arguments based on the pleadings alone do not allow for dismissal. The court notes, however, that this action is in its early stages and that the evidence is presented in support of an area warranting further discovery—specifically, the extent to which plaintiff's transfer could be considered adverse. Accordingly, the court declines to convert the motion into one for summary judgment and will only consider exhibits within the scope of a 12(b)(6) motion.

### B. *Application*

**1. Discrimination and retaliation claims**

A plaintiff may prove intentional retaliation or discrimination under Title VII using either direct or circumstantial evidence. When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. Under that framework, the plaintiff must first establish a prima facie case by showing, in the case of a discrimination claim, that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged or otherwise suffered adverse employment action; and (4) she was treated less favorably than members outside of her protected class or was replaced by a member outside of that class. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 363 (5th Cir. 2004). To establish a prima facie claim of retaliation, the plaintiff must show that (1) she participated in an activity protected by Title VII; (2) her employer took an adverse action against her; and (3) there is a causal link between the two. *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real discriminatory and/or retaliatory purpose. *Id.*

Defendants maintain that plaintiff cannot meet her burden under the first step because her transfer does not amount to an adverse employment action. Instead, they assert that reassignments and term-limited postings are part of the job for substitutes. They also

4

maintain—in reliance on evidence outside the scope of this motion—that plaintiff remained on the substitute list and has since received other postings as a substitute bus driver. Plaintiff responds that her new posting is less desirable, because it requires a longer commute and earlier start time compared to her paraprofessional assignment.

"[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559. Generally, "a purely lateral transfer is not an adverse employment action." *Burger v. Cent. Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999). It may, however, be considered an adverse action when it is equivalent to a demotion. A transfer can be equivalent to a demotion even without any decrease in pay, title, or grade, "such as being less prestigious or less interesting or providing less room for advancement." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)). The focus is on the position's objective qualities, however, and the plaintiff's subjective preference is insufficient to show that the transfer was a demotion. *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001).

In her complaint plaintiff alleged that defendants transferred her to a posting in a science classroom after she complained about the harassment, that this position was terminated soon after her reassignment, and that her position as a paraprofessional was filled in the meantime. Doc. 1, ¶¶ 43–46. In her response brief she admits that she found another position as a substitute bus driver, but only after she had filed her charge of discrimination with the EEOC. She also asserts that this position is less desirable for the reasons described above. These allegations are sufficient to show an adverse employment

action under Rule 12(b)(6)'s standards. If plaintiff suffered harm through loss of wages from the transfer to a shorter-term assignment, then it may easily constitute a demotion. Even if any wage loss was *de minimis*, however, and plaintiff amends her complaint to describe her subsequent employment with the school district, then her areas of dissatisfaction with the new posting may also show that the reassignment amounted to an adverse decision. Accordingly, the motion is denied on this basis.

### 2. *Title VII Claims Against Bagwell Individually*

The defendants next move for dismissal of the Title VII claims against Superintendent Bagwell in her individual capacity. Plaintiff does not object and concedes that there is no individual liability under Title VII. *See, e.g.*, *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002). Accordingly, the motion will be granted in this regard.

### 3. *Official Capacity Claims Against Bagwell*

Defendants also seek dismissal of the claims against Superintendent Bagwell in her official capacity. As they note, a suit against a public employee in her official capacity is essentially a suit against the entity she represents. *Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Accordingly, they maintain that the official capacity claims against Bagwell are duplicative of the claims against the School Board. Plaintiff agrees "[t]o the extent that this position admits that the St. Mary Parish School Board is the proper official-capacity defendant[.]" Doc. 6, p. 7. Defendants do not dispute this statement, and so the motion to dismiss will likewise be granted as to the official capacity claims against Bagwell.

### *4. Qualified Immunity*

Defendant also moves for dismissal the remaining claims against Bagwell in her individual capacity, on the grounds that Bagwell is entitled to qualified immunity. Qualified immunity provides a shield for government officials performing discretionary functions, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (internal quotations omitted). Courts use a two-step process to determine when this immunity applies, by looking to (1) "whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation" and (2) "whether [the employee's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

Defendants argue that plaintiff has not shown any violation of her rights by Bagwell, and note that the only allegation against her in the complaint is as follows:

> In May 2020, Principal Fabre stated at a St. Mary Parish School Board hearing that he did not believe that Ms. Coulon should have been terminated and, further, that the district personnel director, acting on behalf of the Board and Superintendent Teresa Bagwell, instructed him to write-up another teacher on bogus facts in an effort to avoid legal liability.

Doc. 1, ¶ 48 (footnote omitted).[2] Though the paragraph is confusing, plaintiff clarifies in her briefing that Bagwell allegedly instructed Fabre to write up this teacher in order to cover up the district's potential liability for her whistleblower claim.

---

[2] In the footnote plaintiff concedes that Fabre did not name her at the meeting but that she believes he was describing her case.

7

The Louisiana Whistleblower Statute ("LWS") makes it illegal for an employer to retaliate against an employee for disclosing a workplace act or practice that is in violation of state law. La. Rev. Stat. § 23:967(A). The Louisiana Employment Discrimination Law ("LEDL") outlaws employment discrimination based on race, color, religion, sex, or national origin. La. Rev. Stat. § 23:332(A)(1). Plaintiff has not alleged that Bagwell directly violated either of these statutes or any contractual duties by making the adverse employment decisions at issue. Instead, she appears to allege that Bagwell conspired in an effort to cover up these violations. Such allegations may support the constitutional violation of denial of access to the courts, giving rise to liability under 42 U.S.C. § 1983. *Waller v. Hanlon*, 922 F.3d 590, 602–03 (5th Cir. 2019) (citing *Crowder v. Sinyard*, 884 F.2d 804, 812 (5th Cir. 1989)). To prevail on such a claim, however, the plaintiff must show some harm to her cause of action beyond mere delay. *Id.*

Plaintiff has not shown a statutory violation by Bagwell nor has she raised a claim for a constitutional violation under 42 U.S.C. § 1983. Accordingly, Bagwell is entitled to qualified immunity for the state law claims raised against her individually and the court need not consider her arguments regarding statutory immunity. Because plaintiff did not actually raise a § 1983 claim against Bagwell, however, this ruling does not prevent her from seeking leave to amend her complaint if she believes such a claim exists.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 4] will be **GRANTED IN PART** and **DENIED IN PART**. All claims against defendant Teresa Bagwell will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 9th day of June, 2021.

*[signature]*

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**