**UNITED STATES DISTRICT COURT**
**WESTERN  DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **Patrina Coulon** | * | **Civil Action No. 6:21-CV-00019** |
| *Plaintiff* | * | |
| | * | |
| **vs.** | * | **Judge James D. Cain, Jr.** |
| | * | |
| **St. Mary Parish School Board, Teresa** | * | |
| **Bagwell, Does 1-10, ABC Insurance Companies** | * | **Magistrate Patrick J. Hanna** |
| *Defendants* | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**</u>

**NOW INTO COURT**, through undersigned counsel, come defendant, St. Mary Parish School

Board ("School Board"), who offer the present Memorandum in Support of the Motion for Summary

Judgement which has been filed contemporaneously herewith, as follows:

<u>**FACTS**</u>

The Plaintiff, Patrina Coulon (hereinafter "Plaintiff" or "Ms. Coulon"), an African-American

female, alleges that she was subjected to sexual harassment by her female coworkers and that she was

terminated based on race and in retaliation for bringing the alleged harassment to the attention of her

supervisors.[1]   After applying for a substitute position in the cafeteria, Ms. Coulon was hired as a day

by day substitute with the School Board on or about August 20, 2018.[2]   As paperwork was being

prepared and she was being finger printed she informed Ms. Alicia Morris, Clerk/Administrative

Assistant in the Department of Human Resources,  that she would also be interested in being a

---

[1] Record Document 15, Plaintiff's First Amended Complaint, *in toto*.

[2] Exhibit A, Plaintiff's Application; Exhibit B, Payroll Status Form; Exhibit C, Declaration of Alicia Morris, Clerk/Administrative Assistant in Department of Human Resources, St. Mary Parish School Board ¶ 2.

substitute paraprofessional and/or a substitute teacher.[3]  At that time Ms. Morris informed Ms. Coulon of the temporary nature of substitute positions, both day-to-day and long-term, as was her ordinary practice with all newly hired substitutes.[4]  Day-to-day substitutes may be placed in long-term substitute positions when a need is identified by school principals.  With paraprofessionals, principals must obtain approval from Ms. Debra McClarity, Director of Special Education, for whether a long-term substitute is needed and, if so, Ms. McClarity determines who is placed in the position.  Ms. McClarity will consider recommendations from principals if they have such a recommendation.[5]  Day-to-day substitutes may also become long-term substitutes automatically if they are working in the same position for over 21 consecutive school days.[6]  Any time a day-to-day substitute is converted to a long-term substitute, their name is removed from the list that principals use on a day-to-day basis as short-term needs arise.  For the long-term substitute, they will continue in that role and at that location until the need for a long-term substitute is over.[7]

It is Ms. McClarity's responsibility to determine how many special educations paraprofessionals are needed at each school at any give time based on the number of special education students and level of need.  Paraprofessionals are paid through funds specifically designated for students with disabilities by the federal government, and Ms. McClarity  must be able to show justification for expenditures of those federal funds.  As such, it is very important that the number of allotments determined for any

---

[3] Exh. C, Morris Declaration, ¶¶ 1-2.

[4] Exh. C, Morris Declaration, ¶ 3.

[5] Exh. C, Morris Declaration, ¶ 4.

[6] Exh. C, Morris Declaration, ¶ 5.

[7] Exh. C, Morris Declaration,  ¶ 6; Exhibit D, Deposition Excerpt of Suzanne Bergeron, Director of Human Resources, as Rule 36(b) deponent, pp. 87, ll. 12-25 - 88, ll. 2-14.

given school not be exceeded without justification.[8]   Depending on needs of students and available full-time employee paraprofessionals, it is Ms. McClarity's responsibility to determine how many substitute paraprofessionals are needed and how many full-time, permanently hired paraprofessionals are needed at each individual school-site.  All substitute paraprofessionals are hired as day-to-day substitutes, and some are placed in positions as long-term substitute paraprofessionals for various reasons.  For example, a long-term substitute may be placed in a classroom to substitute for a permanent paraprofessional who is out on leave.  Or a substitute could be placed into a vacant position until an individual with the required certification is hired.[9]   Long-term substitute positions are not for any specified period and are subject to end at any time, lasting until the individual whose position was being covered returns, or until an individual with the necessary qualifications/certifications is hired for positions that are vacant.  If neither of these things happen during the school-year, the long-term position ends upon the last day of that year.[10]   Once the long-term position has ended, the individual is automatically moved back to the day-to-day substitute list such that they may be called out for short-term needs.[11]

In January of 2018, a Licensed Professional Nurse (LPN) Paraprofessional retired from her position at Morgan City High School, and Ms. Coulon was assigned as a long-term substitute in that position as they searched for another LPN Paraprofessional for the permanent position, where Ms.

---

[8] Exhibit E, Declaration of Debra McClarity, Director of Special education, ¶ 4.

[9] Exh. E, McClarity Declaration, ¶ 5; Exhibit D, Rule 30(b)(6) deposition excerpt, pp. 29, ll. 17-25 - 32, ll. 1-23.

[10] Exh. C, Morris Declaration, ¶ 7; Exhibit E, Declaration of Debra McClarity, ¶ 6.

[11] Exh. C, Morris Declaration, ¶ 8.

3

Coulon remained throughout the remainder of the 2018-2019 school-year (Spring 2019 semester).[12] There is one self-contained classroom at Morgan City High School, taught by Ms. Marilyn Guarisco. This class has students with significant disabilities, some with medical needs.[13]  A self-contained setting is one where the students remain in that class for the entirety of the school-day due to having significant cognitive and/or physical needs.   The students learn a modified curriculum based upon their specific needs as determined by their Individual Education Plan (IEP).[14]  There is also a combined setting at Morgan City High School, taught by Ms. Sabrina Gaspard.  These students are higher functioning than those that are in Ms. Guarisco's classroom but still have significant needs.  The students in Ms. Gaspard's class attend part of the day in a self-contained classroom and one to two periods per day in the special education resource classroom.  Ms. Coulon was shared between these two classrooms.[15]

The students in the resource classroom are learning a traditional High School curriculum with modifications and accommodations per an Individual Education Program (IEP) developed for each student.  The content of the resource classroom is much more rigorous than in the self-contained classroom due to higher levels of student functioning.[16] The resource special education classroom has the most high-functioning students, and all students receive some services in regular education classrooms.  The School Board has one paraprofessional assigned to resource, Ms. Beverly Morris, who provides services to students both in the special education resource classroom and to students as they

---

[12] Exhibit F, Deposition Excerpt of Mickey Fabre, Principal of Morgan City High School, p. 98, ll. 12-25 to 100, ll. 1-6; Exhibit G, Fabre Deposition, Exhibit 7.

[13] Exh. E, McClarity Declaration, ¶ 7.

[14] Exh. E, McClarity Declaration, ¶ 8.

[15] Exh. H, Declaration of Sabrina Gaspard, Special Education Teacher, ¶¶ 3-6 and 8-9; Exhibit  I, Deposition Excerpt of Marilyn Guarisco, Special Education Teacher at Morgan City High School, pp. 12, ll. 20-25 to 13, ll. 1-6.

[16] Exh. E, McClarity Declaration, ¶ 9; Exh. H, Gaspard Declaration, ¶ 3.

attend regular classes, pursuant to their IEPs.  Ms. Morris is a full-time employee with the proper certifications and experience to provide the type of assistance being provided to these students.[17]

During the 2018-2019 and 2019-2020 school years, Ms. McClarity allotted three (3) paraprofessionals to Morgan City High School, with one (1) assigned to the self-contained classroom all day (Ms. Kinchen), one assigned primarily to Ms. Gaspard's classroom and who would provide some assistance to Ms Guarisco throughout the day (Ms. Coulon), and the third to work with the more high-functioning students (Ms. Morris).  The Office of Special Education was seeking to hire two (2) Licensed Professional Nurses (LPN) paraprofessionals for Ms. Guarisco's and Ms. Gaspard's classrooms.  Ms. Coulon served as a long-term substitute paraprofessional at Morgan City High School during the Spring semester of the 2018-2019 school year, and for a portion of the Fall semester during the 2019-2020 school year, assigned primarily to Ms. Gaspard's classroom and to provide assistance to Ms. Guarisco's students, until an LPN could be hired.[18]

During the Spring semester of 2019, Ms. Coulon got along well with her co-workers and they quickly became friends.  While Ms. Coulon may now try to say they were never friends and that her participation in conversations with the group was involuntary, the evidence clearly shows otherwise.  For example, Mickey Fabre, former Principal of Morgan City High School, testified that he recommended she return in the Fall of 2019 because she meshed so well with her co-workers.[19]  Numerous witnesses testified that Ms. Coulon and her co-workers were more than mere colleagues, but

---

[17] Exhibit E, McClarity Declaration, ¶ 10;  See also: Exh.  D, 30(b)(6) Deposition, p. 29, ll. 17-24 (explaining the difference between full-time paraprofessionals and substitute paraprofessionals).

[18] Exh. E, McClarity Declaration, ¶¶ 11.

[19] Exh. F, Fabre Deposition, pp. 34, ll. 13-25 - 35, ll. 1-20.

that they were friends.[20]   Even Ms. Coulon testified to engaging in group activities with her co-workers in the manner that friends do - going to the movies, out to dinner, exercising together, engaging in numerous text communications with the group, sending pictures of herself in various outfits or with a new hair style, sending pictures of herself in Jamaica, sending pictures of eating crawfish and engaging in jokes regarding sucking the heads, and accepting (and later showing off) outfits given to her by one of the alleged harassers, Shantel Kinchen (who also happened to be he cousin).[21]   It is curious why Ms. Coulon would readily accept gifts of clothing items from Ms. Kinchen, *including* the lingerie she now complains was somehow offensive.[22]   Certainly, with Ms. Coulon's history of accepting other types of clothing items from Ms. Kinchen, it would not have been unreasonable for Ms. Kinchen to believe the lingerie was more of the same and in no way unwelcome, particularly when Ms. Coulon accepted the lingerie in the same manner she had accepted all other gifts of clothing from Ms. Kinchen.[23]

With respect to Ms. Coulon's claims of harassment, the School Board would point out that her complaint did not arise until *after* a disciplinary conference was held to address Ms. Coulon's altercation

---

[20] See Examples:  Exh. H, Gaspard Declaration, ¶¶ 12-14; Exh. F, Fabre Deposition, pp. 67, ll. 1-25 - 68, ll. 1-7; Exhibit J, Declaration of Nakiya Allen, Teacher at Morgan City High School, ¶¶ 4-5; Exh. E, McClarity Declaration, ¶ 18; Exh. I, Guarisco Deposition, pp. 91, ll. 15-30 - 92, ll. 1-3; Exhibit L, Deposition of Shantel Kinchen, Paraprofessional, St. Mary Parish School Board, p. 9, ll 6-9

[21] Exhibit L, Declaration Excerpts of Patrina Coulon, with attached exhibits, pp. 156 ll. 24-25 - 160, ll. 1-10, depo exhibit SB-8; pp. 160, ll. 1-25 - 161, ll. 1-8, depo exhibit SB-10; pp. 161, ll. 8-25 - 162, ll. 1-4, depo. exhibit SB-9; pp. 162, ll. 5-25 - 163, ll. 1-19, depo exhibit SB-11; pp. 165, ll. 1-25 - 166, ll. 1-7, depo exhibit SB-12; pp. 166, ll. 8-13 - 168, ll. 1-10, depo exhibit SB-13; pp. 168, ll. 10-25 - 170, ll. 1-15, depo exhibit SB-14; p. 170, ll. 16-25 depo exhibit 15; pp. 171, ll. 5-25 - 173, ll. 1-10, depo exhibit SB-16(A), (B), and (C); pp. 174, ll. 16-25 - 175, ll. 1-4, depo exhibit SB-17; pp. 175, ll. 5-18,  depo exhibit SB-18.  Please note that exhibits 7, 12, and 16(A),(B), and (C)  could not be included as an attachment to the deposition as the undersigned was unable to convert to PDF.  As such, these exhibits are labeled as Exhibit L(7), Exhibit L(12), Exhibit L(16A), Exhibit L (16B), and Exhibit L (16C), respectively.

[22] Exh. L, Coulon Deposition, pp. 58, ll. 7-25 - 59, ll. 1-3; pp. 64, ll. 2-25 - 65, ll. 1-8; pp. 168, ll. 10-25 - 170, ll. 1-15, depo exhibit SB-14.

[23] *Id.*

6

with one of the special education teachers, Ms. Sabrina Gaspard, that occurred on October 23, 2019.[24] After being asked to return as a special education paraprofessional in the Fall because she had done well the year prior, things quickly deteriorated.[25]   Ms. Coulon's support in Ms. Gaspard's class became sporadic, starting with her having to take off of work for various doctor's appointments or other matters.  Then, when she was at school, she would avoid coming to Ms. Gaspard's classroom, preferring to stay in Ms. Guarisco's classroom, despite that fact that she was supposed to provide services in Ms. Gaspard's classroom in accordance with a schedule.  It became a hardship for Ms. Gaspard as the students in her class were not getting the support that they needed, culminating in a verbal altercation between Ms. Gaspard and Ms. Coulon on October 23, 2019.  On that day, in front of students, Ms. Coulon yelled at Ms. Gaspard and stated that she did not want to work with Ms. Gaspard or with those "types of kids."  The students were visibly upset and Ms. Gaspard asked Ms. Coulon to leave her room. Ms. Gaspard was admittedly angry, and after the incident, both parties were asked to write a statement for review by the school-site administrator and were issued a written reprimand.[26]   Ms. Coulon's statement described various complaints about working with the involved teacher but made no mention whatsoever of sexual harassment.[27]   A disciplinary conference was held with both parties, and Ms. Coulon was warned about the importance of maintaining professionalism, going to assigned classes at

---

[24] Exhibit M, Reprimand with attached statement of P. Coulon and S. Gaspard dated October 25, 2019; Exhibit N, Plaintiff's handwritten complaint of harassment dated October 28, 2019.

[25] Exh. H, Gaspard Declaration, ¶¶ 16-24.

[26] Exh, H, Declaration of Sabrina Gaspard, ¶¶ 15-24; Exh. M, reprimand with attached statements.

[27] *Id.*

7

assigned times, and improper  utilization of her cell-phone during instructional time.[28]   The involved

teacher was also issued a similar disciplinary conference form.[29]

Because Ms. Coulon indicated to Mr. Fabre at October 25, 2019 meeting that she did not want

to go back into the Special Education classroom, Mr. Fabre contacted Ms. McClarity so they could

determine how staffing would need to be rearranged.[30]   It was not until that date that Ms. Coulon then

submitted a complaint of sexual harassment.[31]   In her Complaint to the Court, Plaintiff attributes this

delay to being allegedly told by the Assistant Principal, Kim Caesar, that "white don't eat white and

you'll be out the door" as she was purportedly headed to report the harassment to Mr. Fabre.[32]

However, when asked about this during her deposition, Ms. Coulon testified that this conversation

would have happened on *the same day* that Ms. McClarity came to discuss the altercation - October 28,

2019 - *after* she had been issued a written reprimand and *after* she had advised she did not want to remain

in the special education classroom.[33]   Therefore, even if such a conversation occurred (which is at all

times denied),[34] it could not have delayed her reporting as she earlier alleged.

---

[28] *Id.*

[29] Exh. F, Fabre Deposition, p. 33, ll. 2-6.

[30] Exh. L, Coulon Deposition, pp. 99, ll. 2-25 - 100, ll. 1-8; Exh. E, McClarity Deposition, ¶¶ 14-15.

[31] Exh. N, complaint.

[32] Rec. Doc. 15, p. 10, ¶ 40.

[33] Exh. L, Coulon Deposition, pp. 100, ll. 9-25 - 101, ll. 1-2.

[34] Ms. Caesar testified that she never made any such statement to Ms. Coulon, and multiple witnesses
who know Ms. Caesar declared that such a comment would have been totally out of character for her.  Based
on the inconsistencies in Ms. Coulon's Complaint to the Court and her own testimony, along with Ms. Caesar's
denial with corroboration by other witnesses, this allegation is clearly not credible and no fact finder could
determine otherwise.  (See Exhibit Q, Deposition Excerpt of Kim Caesar, Assistant Principal at Morgan City
High School, p. 29, ll. 15-22; pp. 40, ll. 14-25 - 42, ll. 1-21;  Exh. H., Gaspard Declaration, ¶ 31; Exh. J, Allen
Declaration, ¶ 17; Exh. R, Williams Declaration, ¶ 12; Exh. S, Stubbs Declaration, ¶ 14).

Plaintiff submitted a number of colorful text messages and photographs in support of her allegation, further making claims about alleged poor treatment of special educations students.[35]   Once her allegations of sexual harassment were reported, a full investigation was conducted.[36]   As part the investigation Ms. Coulon submitted a set of text messages as purported evidence of the alleged harassment; however, during the investigation admitted that she had deleted all of her comments from the message threads before sharing with the school administrator.[37]   Based on the interviews with witnesses it was clear to administration that Ms. Coulon's allegations were without merit.[38]   The involved individuals, including Ms. Coulon, were all friends and Ms. Coulon was a willing participant in all conversations - whether of a sexual nature or otherwise.  It was not until Ms. Coulon had her falling out with Ms. Gaspard and was issued a disciplinary conference report with respect to *her own* poor behavior that these allegations of harassment arose.  Furthermore, most, if not all, of the personal conversations occurred away from school, outside of school hours, and on the personal devices of all parties.[39]

Ms. Coulon requested that she not be placed back into the special education classroom, so it was up the school and Ms. McClarity to determine how staffing should be arranged.  However, Ms. McClarity had to undergo emergency surgery, and the matter was placed on hold until she was well enough to return.  In the interim, because Morgan City High School was allotted three (3)

---

[35] Exh. N, complaint.

[36] Exhibit O, Investigation Documents.

[37] *Id.*

[38] Exh. E, McClarity Deposition, ¶¶ 15-19; Exh. D, 30(b)(6) Deposition, pp. 143,ll. 4-25 - 144, ll. 1-15.

[39] Exhibit O, Investigation Documents.

paraprofessionals, Mr. Fabre was able to retain Ms. Coulon at the school.[40]  In late November or early December two LPN paraprofessionals were hired and the plan was to place them both at Morgan City High School.  Ms. McClarity was still out on leave, so Ms. Bergeron went to the school to notify both Ms. Kinchen and Ms. Coulon that their services at Morgan City High School were coming to an end.  As a full-time permanent employee, Ms. Kinchen was notified that she would be transferred to another school.  There was no need for any additional long-term substitute paraprofessionals in the district at the time, so Ms. Coulon was placed back on a day-by-day substitute status.[41]  Ms. Coulon was not fired or terminated from her employment and remained on the substitute list.

Ms. Coulon's allegations of harassment are plainly false and have been harmful to the other involved employees.  Ms. Gaspard, Ms. Guarisco, and Ms. Kinchen have all expressed that they were hurt by the allegations as they believed they were all friends.[42]  Then, to add insult to injury, Ms. Coulon made the ludicrous allegation that one of them placed a rat trap in her driveway as some sort of warning.[43]   If anything, such allegations could be considered defamatory and harassing towards Ms. Gaspard, Ms. Guarisco, and Ms. Kinchen, particularly as Ms. Coulon has gone so far as to call the police and file a baseless police report in recent months against Ms. Kinchen when her grandchild accidentally called Ms. Coulon's telephone.[44]

Interestingly, Ms. Coulon alleged in her complaint that the purported "harassment" had begun in January of 2019, when she had first been placed as a long-term substitute at Morgan City High

---

[40] Exh. E, McClarity Declaration, ¶¶ 11-27.

[41] *Id.*; Exh. C, Morris Declaration, ¶¶ 10-23.

[42] *Id.*

[43] Rec. Doc. 15, First Amended Complaint, ¶ 44; Exh. L, Coulon Deposition, p. 156, ll. 1-20, depo exhibit SB-7 (photograph of rat trap).

[44] Exh. L, Coulon Deposition, pp. 59, ll. 12-25 - 61, ll. 1-12.

School.[45]   However, after her position ended at the end of that school-year, she continued to communicate with the group throughout the Summer.   Subsequently, she readily accepted the opportunity to return as a long-term substitute paraprofessional in the Fall of 2019 in those same classrooms.[46]   In fact, despite her claim that she was being harassed throughout the fall semester, on May 27, 2019 she sent a text message stating "[t]hanks for having me in your class this school year and looking forward to seeing you next school year," with three different heart emojies.[47]   In response, Ms. Guarisco referred Ms. Coulon, Ms. Kinchen, and herself as the "Three Musketeers."[48]   After continued communication over the Summer and agreeing to go back to the long-term substitute position, on September 24, 2019, approximately *one month before* Ms. Coulon made her allegation of sexual harassment, she sent a text message Ms. Kinchen stating "[y]ou and Gee [Ms. Guarisco] are the best. I couldn't ask God to place me in a better working place."[49]   It belies common sense that Plaintiff would send such glowing appreciation to the very two people alleged to have been harassing her, mistreating students in front of her, and displaying sexualized behavior in the classroom all those months.   No reasonable fact finder could find that Ms. Coulon was subject to unwelcome sexual harassment in any way, nor that she was removed from the long-term substitute position as the result of any discriminatory or retaliatory reason.   There is no evidence whatsoever in support of Ms. Coulon's claims and this matter should be dismissed on summary judgement as a matter of law.   Furthermore, the School Board should be awarded reasonable attorney fees for Plaintiff's filing of a clearly frivolous lawsuit.

## LAW AND ARGUMENT

---

[45] *Id.*

[46] Exh. F, Fabre deposition excerpt, p. 34, ll. 13-14.

[47] Exh. L, Coulon Deposition, pp. 165, ll. 1-25 - 166, ll. 1-7, depo exhibit 12.

[48] *Id.*

[49] Exh. L, Coulon Deposition, pp. 174, ll. 16-25 - 175,  ll. 1-4, deposition exhibit 17.

## I.      Summary Judgement Standard

A motion for summary judgment should be granted "If the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact then the moving party is entitled to judgment as a matter of law."[50] As the United States Supreme Court stated in *Celotex Corporation v. Catrett*: "The plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of elements essential to the party's case in which the party will bear the burden of proof at trial."[51] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[52] A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[53] Here, Plaintiff cannot establish the facts necessary to prove her claims of sexual harassment and/or a hostile working environment because the evidence is clear that Plaintiff was a willing participant in the colorful banter that occurred among friends, mostly outside of the work environment, and there is no competent evidence in the record that could lead a reasonable trier of fact to believe that the banter was unwelcome or that she perceived it to be hostile or abusive.  Plaintiff equally cannot show that she was subjected to adverse action based upon her race, sex, or in retaliation for engaging in a purported protected activity because the School Board has presented a legitimate and valid reason for Plaintiff's removal from Morgan City High School as a long-term substitute paraprofessional and reassignment as day-to-day substitute, and the Plaintiff has presented no evidence whatsoever that the reason was pretextual.  Based on the same facts and evidence presented in the

---

[50] Federal Rules of Civil Procedure 56(C).

[51]*Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[52] *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir.2012) (quoting FED. R. CIV. PRO. 56(a)).

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

foregoing, there is no evidence in the record that would support alleged violations or good faith and fair

dealing and of the Louisiana Whistleblower Act.  Finally, the School Board would show that the Plaintiff

has filed a frivolous claim and the School Board is entitled to reasonable attorney fees.  In accordance

herewith, all claims against the School Board should be dismissed as a matter of law and the School

Board should be awarded reasonable attorney fees for defense of a frivolous claim.

## II.  Legal Analysis and Argument

### A.      No Title VII Sexual Harassment and/or Hostile Working Environment

The plaintiff in any Title VII sexual harassment case must, as an initial matter, establish that (1)

she belongs to a protected class; (2) that she was subjected to *unwelcome* sexual harassment, and (3) the

harassment was based on sex.[54]  Here, pursuant to the facts fully set forth above, the Plaintiff has not

and cannot show that communications between the Plaintiff and her co-workers, even if they occurred

exactly as described (which is at all times denied), was unwelcome.  As more fully described above,

Plaintiff in this matter was friends with the involved co-workers.  Plaintiff admittedly spent time with

her co-workers during their off time, and when it came to text messages, Plaintiff was fully engaged in

the conversations.  In her Complaint, Plaintiff submits to the court incomplete  sections of text

messages, making them appear to be something they are not.  For example, one conversation appears

to be crude comments related to oral sex.[55]  However, the full conversation shows that the discussion

revolved around crawfish, with the double entendre quite common in here in Louisiana.[56]   What

Plaintiff fails to point out is that she was the one eating crawfish and sharing the picture, and that she

---

[54] *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 381–82 (5th Cir. 2003).

[55] Rec. Doc. 15, Amended Complaint, p. 6.

[56] Exhibit P, crawfish conversation.  See also Exh. L, Coulon Deposition, pp. 156, ll. 24-25 - 16-, ll. 1-10 (testimony by Coulon admitting they were discussing crawfish); Exh. I, Guarisco Deposition, pp. 56, ll. 7-25 - 72, ll. 1-15 (testifying to the meaning of the conversation and Ms. Coulon's involvement); pp. 37, l. 1-25 - 45, ll.1-19 (testifying to the meaning of the conversation and Ms. Coulon's involvement).

responded not only with smiley faces and laugh emojis, but also with her own comment, "I sucking em, (laugh emoji) sucker![57]

Furthermore, in order to prevail in a hostile work-environment claim, plaintiffs must assert and prove (1) they belong to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was motivated by discriminatory animus (sex); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.[58] In determining whether an actionable hostile work-environment claim exists, a court must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.[59] The type of conduct constituting sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive work environment. Every act of harassment, although reprehensible, does not necessarily give rise to a hostile work-environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment.[60]   The work environment must be "both objectively and subjectively

---

[57] *Id.*

[58] *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 381–82 (5th Cir. 2003).

[59] *Alcorn v. City of Baton Rouge,* 02–0952 (La.App. 1st Cir.12/30/04), 898 So.2d 385, 389, *writ denied,* 05–0255 (La.4/8/05), 899 So.2d 12.

[60] *Brown v. Vaughn,* 589 So.2d 63, 65 (La.App. 1st Cir.1991); *E.E.O.C. v. WC & M Enterprises, Inc.,* 496 F.3d 393, 399 (5th Cir.2007) (national origin and religion harassment); *Johnson v. TCB Const. Co., Inc.,* 334 Fed.Appx. 666, 670–71 (5th Cir.2009) (racially hostile work environment); *Stewart v. Miss. Transp. Commission,* 586 F.3d at 330–31 (sexual harassment), *citing Lauderdale v. Texas Department of Criminal Justice, Institutional Division,* 512 F.3d 157, 163 (5th Cir.2007).

offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[61]

Here, first and foremost, Plaintiff has not and cannot show that *she* perceived the actions described in her complaint to be hostile or abusive.  As fully briefed above, Plaintiff admittedly maintained regular communications with the alleged harassers not only during the Spring of 2019 while working together, but also during the Summer.  For example, soon after Ms. Guarisco's son passed away, Ms. Coulon comforted her and picked up balloons to place on her child's grave on his birthday.[62]

 She expressed, of her own accord, her thanks and gratitude for having the opportunity to work with Ms. Kinchen and Ms. Guarisco, both in May of 2019 and again in September of 2019 - all during the time period the alleged harassment was purportedly occurring.[63]  Plaintiff never indicated that she was offended by any of the alleged harassment, be that in the classroom or elsewhere.  For example, consider the lingerie.  It was common practice for Ms. Kinchen to give clothing to Plaintiff which she happily accepted and wore, going even so far as to model the outfits.[64]  If Plaintiff thought it was abusive, or if she was offended in any way, she could have simply given it back and stated she was not interested in receiving those types of garments.  Instead, she put it in her car, took it home, and rather than returning it to Ms. Kinchen, gave it to her lawyer.[65]  Ms. Coulon's actions are simply incongruent with her claim of being subjected to severe and pervasive harassment.

Additionally, the evidence is clear that the school board did not know or should have known of the alleged harassment and failed to take proper remedial action.  Multiple witnesses who visited the

---

[61] *Aryain v. Wal–Mart Stores of Texas, LP,* 534 F.3d 473, 479 (5th Cir.2008)*, quoting Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[62] Exh. L, Coulon Deposition, pp. 171, ll. 5-15 - 173. Ll. 1-10, depo exhibit SB-6(A), 6(B), and 6©.

[63] Exh. L, Coulon Deposition, pp. 165, ll. 1-25 - 166, ll. 1-7, depo exhibit SB-12.

[64] Exh. L, Coulon Deposition, pp. pp. 168, ll. 10-25 - 170, ll. 1-15, depo exhibit SB-14.

[65] Exh. L, Coulon Deposition, pp. 64, ll. 5-25 - 65, l. 1

classroom had no knowledge of any of the alleged incidents alleged to have occurred, and those who know the parties found such alleged behavior in the classroom to be wholly out of character.[66] Furthermore, Plaintiff made no complaint whatsoever to the School Board until October, and most of the incidents described occurred outside of school and school hours

B.   **No Discrimination Pursuant to Federal and/or Louisiana law, and No Unlawful Retaliation**

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment.[67]   Intentional discrimination in employment is equally prohibited under Louisiana law, which provides that it is unlawful for an employer to discriminate against an employee by discharging them, or otherwise intentionally discriminating against the employee, because of the employee's "race, color, religion, sex, or national origin."[68]   Under the statute, an employer may not intentionally deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee because of their race or sex.[69]   Based on the commonality between federal and state anti-discrimination laws, state courts may appropriately consider a federal court's interpretation of federal statutes to resolve similar questions concerning Louisiana statutes and the proper burden of proof sequence.[70]   Louisiana's anti-discrimination statute is "substantively similar" to Title VII, and Louisiana courts routinely look to

---

[66] Exh. C, McClarity Declaration, ¶ 27; Exh. J, Allen Declaration, ¶¶ 6-16; Exhibit R, Declaration of Col. Williams, ROTC Instructor,  ¶¶ 2-11 Exhibit S, Declaration of Sgt. Stubbs, ¶¶ 2-13.

[67] 42 U.S.C. § 2000e *et seq.*

[68] La. R.S. 23:332(A)(1).

[69] La. R.S. 23:332(A)(2).

[70] *Baldwin v. Board of Supervisors for University of Louisiana System,* 2019-0811 (La. App. 1st Cir. 2/21/20), 299 So. 3d 105, 108, *writ denied*, 2020-00788 (La. 10/14/20), 302 So. 3d 1118.

the federal jurisprudence for guidance, thus, this section and the arguments herein are applicable to both federal and state claims of discrimination asserted by Plaintiff.[71]

The Plaintiff must show that her gender and/or her race played a part in her alleged discriminatory treatment, i.e., her administrative transfer to the science department,[72] and her eventual purported termination.[73]   Discrimination claims based on circumstantial evidence are evaluated according to the framework set forth in *McDonnell Douglas Corporation v. Green*[74] whereby a Plaintiff must first establish a prima facie case of discrimination.[75]   Therefore, the Plaintiff must show that her gender and/or her race played a part in her alleged discriminatory mistreatment as an employee of the St. Mary Parish School Board as well as in her removal from Morgan City High School.[76]   To establish a prima facie case of discrimination Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered some adverse employment action by the employer; and (4) she was treated less favorably than other similarly situated employees outside of the protected group.[77]   Similarly, to establish a prima facie case of unlawful retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered a material adverse action; and (3) that a causal link exists between the protected activity and the adverse action.[78]   Regarding her claim of discriminatory

---

[71] La. R.S. § 23:301 *et seq.*;  *McCoy* at 556 and fn. 4 (quoting *Trahan v. Rally's Hamburgers, Inc.,* 696 So.2d 637, 641 (La.App.1st Cir.1997)).

[72] See First Amended Complaint, Para. 42, Pg. 10; Para. 47, Pg. 11.

[73] See First Amended Complaint, Para. 43, Pg. 10; Para. 47, Pg. 11.

[74] 411 U.S. 792, 802-05 (1973).

[75] *Morris v. Town of Independence,* No. 14-1523, 2015 WL 6134108, *4 (E.D. La. 2015).

[76] *Id.*

[77] *Id.* (citing *Willis v. Cleco Corp.,*, 749 F.3d 314, 320 (5th Cir. 2014)(emphasis added) (quoting *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007)).

[78] *McCoy* at 556.

treatment, for purposes of this motion only and without admission, the School Board will not dispute that Plaintiff has established her prima facie case for alleged discrimination.  However, with respect to her claim of retaliation, as more specifically set forth below, Plaintiff has failed to establish a prima facie case.

      **1.**      **Plaintiff has failed to establish a prima facie case of retaliation.**

Plaintiff has failed to meet her burden of showing a causal connection between her act of reporting alleged sexual harassment and her removal from her position as a long-term substitute paraprofessional at Morgan City High School.   Ms. Coulon specifically requested to be removed from her position as a long-term substitute paraprofessional in Ms. Gaspard's classroom *before* she made any complaint of sexual harassment.[79]  Her ultimate removal from school flowed out of that request because the school was simply not in need of an additional paraprofessional in *any* classroom except for Ms. Gaspard's and Ms. Guarisco's classes, with that paraprofessional to be shared between the two classes.[80]  Therefore, Plaintiff's removal from providing substitute paraprofessional services at Morgan City High School had no causal link to her complaint of sexual harassment.  Furthermore, contrary to Ms. Coulon's assertions, she was not fired from the School Board.  Rather, she remained on the day-to-day substitute teaching list (the position for which she originally applied), and she was called out and performed substitute teaching and bus driving services for the School Board until she specifically requested to be removed from the substitute list in April, 2020.[81]  Thus, there is equally no causal connection between her removal from the substitute list and her complaint of sexual harassment.

---

[79] Exh. M, reprimand and Plaintiff's statement (October 25, 2019, requ

[80] Exh. E, McClarity Declaration, ¶¶ 4-14, ¶ 20, and ¶¶ 23-26.

[81] Exh. C, Morris Declaration, ¶¶ 9-15.

Therefore, Ms. Coulon has failed to make a prima facie case of retaliation and her claim of retaliation should be dismissed without further inquiry.

> **2.      The School Board has presented a legitimate, nondiscriminatory and non-retaliatory reason for its actions and Plaintiff has presented no evidence sufficient to show the stated reason was pretextual.**

With respect to Ms. Coulon's claim of discrimination, and her claim of retaliation should this Court deem Plaintiff to have made her prima facie case, once a plaintiff establishes a prima facie case of discrimination or retaliation the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action. If the defendant meets that burden of production, the plaintiff must then offer evidence sufficient to show the reason was pretext for discrimination or that plaintiff's protected status was a motivating factor for the action.[82]

Here, the School Board has proffered a legitimate, non-discriminatory reason for Plaintiff's removal from her long-term substitute paraprofessional position at Morgan City High School in October, 2019, and ultimately, her removal as a substitute from Morgan City High School in December, 2019. Ms. Coulon had stopped performing her duties in a consistent and satisfactory manner, she had an altercation with one of the teachers, Sabrina Gaspard, related to her lack of performance, and Ms. Coulon was issued a reprimand for engaging in the altercation.[83] It was based on these factors that Ms. Coulon requested to be removed from her assignment as a long-term substitute paraprofessional in Ms. Ms. Gaspard's classrooms, which effectively meant a removal from Ms. Guarisco's classroom as well.[84] Notably, Ms. Coulon's request to be moved came *before* her complaint of purported sexual harassment,

---

[82] *Adams v. Franklin Parish School Board,* 2021 WL 1269124 at 6, ((W.D. La. 2021).(citing *Alvarado v. Tex. Rangers,*492 F.3d 605, 611 (5th Cir. 2007); See also: *McDonnell Douglas Corp. V. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), re-affirmed in *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 113 S.Ct. 2742 (1993); *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir. 1993).

[83] Exh. M, reprimand and Plaintiff's statement.

[84] *Id.*

and it was not until she was called in to speak with her supervisors, Ms. Debra McClarity (Director of Special Education) and Mr. Mickey Fabre (school Principal) regarding the matter that she suddenly expressed a claim of sexual harassment.[85]  Because she requested to not be placed back into her assigned long-term substitute position, and because there was no other long-term substitute positions available at any schools in the district, she was necessarily placed back on the day-to-day substitute list.  Simply put, Ms. Coulon was hired as a day-to-day substitute, she was assigned a long-term *temporary* position, and once it was determined there was no other placement available as a long-term substitute, the School Board had no alternative but to reassign her back into her day-to-day position.[86]

Now that the School Board has presented a legitimate reason for its action, it is up to the Plaintiff to present evidence of pretext.  For a Plaintiff to prove pretext at summary judgement in an employment discrimination case, he or she "must do more than cast doubt on whether [the employer] had just cause for its decision; he or she must show that a reasonable fact finder could conclude that [the employer's] reason is unworthy of credence."[87]  Here, by Ms. Coulon's own admission, the School Board did not remove Ms. Coulon from her long-term substitute position in the special education classrooms at Morgan City High School, rather, she herself requested to be removed and the School Board complied with her request.[88]  The evidence is clear that despite trying to create a long-term substitute paraprofessional position for Ms. Coulon at Morgan City High School, there was no need for such with exception of the classrooms from which she had requested to be removed.  Furthermore, as explained above, Morgan City High School was only allotted three (3) paraprofessionals, and once someone with the proper credentials was hired as a permanent paraprofessional for the classes to which

---

[85] Exh. E, McClarity Declaration, ¶¶ 13-15.

[86] Exh. C, Morris Declaration, ¶¶ 8-11.

[87] *King v. W.W. Grainger Inc.*, 502 Fed.Appx. 360, 362 (5th Cir. 2012)(Citing *Moore v. Eli Lilly & Co.,* 990 F.2d, 812, 815-16 (5th Cir. 1993).

[88] Exh. M, reprimand and Plaintiff's statement.

she had initially been assigned, there was no available position at Morgan City High School as they were again at the allotted number of paraprofessionals.  Once her placement as a long-term substitute para-professional ended for the reasons evidenced herein, as with any long-term substitute position, Ms. Coulon  was automatically was placed back onto the day-to-day substitute list.  It was explained to her that there were simply no other long-term substitute positions available in the district.  Based on the facts and evidence in the record, no reasonable fact finder could determine that the proffered reasons for her removal were pretextual and her claim of discrimination and retaliation must fail.

### C.    No Breach of Implied Covenant and Fair Dealing

Under state contract law, the Defendants did not breach the implied covenant of good faith and fair dealing.   In Louisiana, there is no statutory or jurisprudential basis for the theory of "breach of implied covenant of good faith and fair dealing" to apply to the contractual relationship between the School Board and its employees beyond the general rule that Louisiana recognizes an implied covenant of good faith and fair dealing in every contract.[89]  First, Ms. Coulon had no contractual arrangement with the School Board that could have been breached.  Second, even if this Court were to consider some implied contract by virtue of her employment, based on those facts presented herein establishing the Plaintiff has no evidence of pretext, there is equally no evidence presented in the Complaint or by the Plaintiff that proves the School Board did not act fairly and in good faith in each of its administrative employment actions taken with respect to Plaintiff.

Further, the case of *Grisaffi v. Dillard Dep't Stores, Inc.*[90] referenced by the Plaintiff in the Complaint does not mention "fair dealing," nor does it apply in any way to the facts of the present case.  In *Grisaffi*, the fact dealt with a lessor and lessee and a dispute regarding payments for rentals.  There is no relevant

---

[89] *Brill v. Catfish Shaks of America,* 727 F.Supp. 1035, 1039 (E.D.La.1989); *Bonanza Int'l, Inc. v. Restaurant Management Consultants, Inc.,* 625 F.Supp. 1431, 1445 (E.D.La.1986); *Clark v. Am.'s Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997).

[90] *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F. 3d 982, 983 (5th Cir.1995).

legal analogy or application to the present case, particularly concerning contractual duties and responsibility between an employer and employee in a school system.  Nor is there any factual argument from the Plaintiff that the Defendants acted in bad faith as no discrimination nor retaliation were present in their decision related to her substitute assignments.

In the Complaint, The Plaintiff alleges that Defendants failed to act in good faith and fair dealing with regards to Plaintiff's employment contract.  Even if the theory of good faith and fair dealing were to be applied in this case, the School Board did not disturb this theory by transferring the Plaintiff to the science department, nor did they violate any contract by allowing the Plaintiff a spot on the substitute teaching list.  The School Board was permitted to both (1) transfer Plaintiff to a comparable position in the science department, and (2) were legally and procedurally permitted to offer the Plaintiff alternative employment pursuant to staffing needs. They were not contractually nor legally obligated to offer Plaintiff a new contract (if any such contract existed), nor were they obligated to create a position for Plaintiff in lieu of transferring or removing the Plaintiff from Morgan City High School. The employment opportunities offered to the Plaintiff were fair and the School Board's decisions fell squarely within the non-discriminatory parameters of employment availability and the Plaintiff's qualifications. Therefore, the School Board acted in good faith by both transferring and ultimately removing the Plaintiff from Morgan City High School based on their staffing needs.

### D.    No Breach of Louisiana Whistleblower Act

In this case, the Plaintiff has failed to prove that the School Board violated the Louisiana Whistleblower Act ("LWA").  The Plaintiff has been unsuccessful in providing sufficient facts to support the finding that she was retaliated against by her employer under the LWA, La. R.S. 23:967. Instead, the actions of the School Board and any individual employees regarding Plaintiff were taken in the good faith exercise of their power and authority and constituted justified and appropriate steps to address Plaintiff's complaints and address school staffing needs.

The LWA prohibits an employer from taking reprisal against an employee who, in good faith, and after advising their employer of a violation in law, "[d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law."[91]   The "reprisal" prohibited by employers in the statute includes the firing or causing loss of benefits to the alleged whistleblowing employee.[92]  The statute also provides that if the suit was brought by the Plaintiff in bad faith, or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the Plaintiff.**[93]**

The application of the LWA in employment law has been clearly established by Louisiana district courts.  Under this law, the courts are bound by the language of La. R.S. 23:297.  The court in *Hale v. Touro Infirmary* concluded that, "the Whistleblower Statute supports actions by plaintiffs who are aware of a workplace practice or act in which a violation of law actually occurred," and that the statute's specific language referring to a "violation of law…manifests a desire by the Louisiana legislature to only provide a remedy to employees of *private* employers whose practices are in *actual* violation of law, and not simply practices disagreed with or found distasteful by the employee."[94]  The Court further emphasized the Whistleblower Statute offers protection only to those employees who face "reprisals" from their employers based solely upon an employee's knowledge of an illegal workplace practice, in addition to his intention to report it.[95]

In considering the plain language of the LWA, the relevant Louisiana jurisprudence, and the evidence provided in this case, it is evident that Plaintiff is unable to meet her burden of proof in her LWA claim.  Under the standard set forth in *Hale*, to succeed under a LWA claim at trial, there are four

---

[91] La. R.S. 23:967(A)(1).
[92] La. R.S. 23:967(C)(1).
[93] La. R.S. 23:967(D).
[94] "[T]he violation of law in question must be that of a state statute." *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1216, *writ denied* 2005-0103 (La. 3/24/05), 896 So. 2d 1036.
[95] *Id.*

elements the Plaintiff must prove to succeed in a LWA action[96]  The elements include (1) that the School Board committed an actual violation of state law through a prohibited workplace act or practice; (2) that Plaintiff advised her employer of the violation; (3) that she threatened to disclose or disclosed the workplace practice; and (4) that she was fired or lost benefits as a result of her threat to disclose or disclosure of the practice.[97]  While for purposes of this Motion the School Board does not dispute that she advised the School Board of an alleged violation and that she disclosed an allegedly illegal workplace practice, Plaintiff has failed to provide evidence sufficient to prove the remaining two elements.  For the reasons established in the Sexual Harassment-Hostile Working Environment above, there is no evidence that the School Board committed an actual violation law.  Furthermore, as argued in the retaliation section above, Plaintiff has failed to present evidence that adverse action was taken against her based upon her disclosure of alleged sexual harassment.  Therefore, Plaintiff's LWA claims should be dismissed with prejudice.

### E.        Plaintiff has Asserted a Frivolous Claims.

The Plaintiff's Petition for Damages has no basis in law or fact, and therefore, Plaintiff has asserted a frivolous claims.  As a result of Plaintiff's filing of this Petition, the School Board has been required to obtain the services of the undersigned attorneys and are entitled to receive from Plaintiff reasonable attorney's fees and costs incurred in and through the defense of this action.

Additionally, La. R.S. 23:967 provides that "[if] suit or complaint is brought in bad faith or if it should be determined by a court that the employer's act or practice was not in violation of the law, the employer may be entitled to reasonable attorney fees and court costs from the employer."[98]  Pursuant

---

[96] *Hanna v. Shell Expl. & Prod., Inc.,* 2017-0293 (La. App. 4 Cir. 12/6/17), 234 So. 3d 179, 194; See also *Hale,* 234 So. 3d at 194.

[97] *Id.;* See also La. R.S. 23:967

[98] See *Broussard v. Bd. of Supervisors of Louisiana State Univ. & A & M Coll.,* No. CV 19-00527-BAJ-RLB, 2021 WL 2878268, at *9 (M.D. La. July 8, 2021); *Hale v. Touro Infirmary,* 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So. 2d 1210, 1216, *writ denied* 2005-0103 (La. 3/24/05), 896 So. 2d 1036.

to the law and argument set forth above, it has been established that the School Board did not act in any way as to violate state or federal law. Therefore, without even needing to consider the bad faith of the Plaintiff in bringing the present lawsuit, the School Board is entitled to reasonable attorney fees and court costs.

**CONCLUSION**

As set forth hereinabove, the law affords Plaintiff no remedy on the facts alleged. Accordingly, East Baton Rouge Parish School Board respectfully requests that this Motion for Summary Judgment be granted and that Plaintiff's claims be dismissed, with prejudice, at her cost.

**Respectfully submitted,** this the 14th day of April, 2022

**HAMMONDS, SILLS, ADKINS & GUICE, LLP**
2431 S. Acadian Thruway, Suite 600
Baton Rouge, Louisiana 70808
Telephone: 225/923-3462
Facsimile: 225/923-0315

 s/ Melissa S. Losch
**ROBERT L. HAMMONDS**
Louisiana Bar Roll No. 6484
**PAMELA WESCOVICH DILL**
Louisiana Bar Roll No. 31703
**MELISSA S. LOSCH, T.A.**
Louisiana Bar Roll No. 26811
**JOHN R. BLANCHARD**
Louisiana Bar Roll No. 37036

**CERTIFICATE OF SERVICE**

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **MEMORANDUM** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Plaintiffs of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 14th day of April, 2022

 s/Melissa S. Losch
MELISSA S. LOSCH