## UNITED STATES DISTRICT COURT
## WESTERN  DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **Patrina Coulon** | * | **Civil Action No. 6:21-CV-00019** |
| *Plaintiff* | * | |
| | * | |
| **vs.** | * | **Judge Robert R. Summerhays** |
| | * | |
| **St. Mary Parish School Board, Teresa** | * | |
| **Bagwell, Does 1-10, ABC Insurance Companies** | * | **Magistrate Patrick J. Hanna** |
| *Defendants* | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY TO PLAINTIFF'S RESPONSE TO
## SCHOOL BOARD'S STATEMENT OF UNDISPUTED MATERIAL FACTS

    **NOW INTO COURT**, through undersigned counsel, comes defendant, St. Mary Parish School Board ("School Board"), who respectfully responds to Plaintiff's denials and qualifications to the School Board's Statement of Undisputed Facts.  The School Board would first note that the Statement of Facts filed contemporaneously with its Motion for Summary Judgement and Memorandum in Support was thoroughly supported by documents filed in the record and fully cited within the Memorandum in Support of Motion for Summary Judgement.[1]  While it is the understanding of the undersigned that such is sufficient to comply with Fed. R. Civ. Proc. 56; for convenience of the Court and to ensure compliance, the citations have been added herein.  In addition, the School Board included the record document number for ease of identification and location in the record.  fil citations to the record for each supporting exhibit filed with its Motion for Summary Judgement   to the record document citation where al provided herein.  The School Board

---

[1] Rec. Doc. 31, Motion for Summary Judgement with list and description of each evidentiary exhibit; Rec. Doc. 31-1, Memorandum in Support of Motion for Summary Judgement; Record Document 31-2, Table of Contents; Rec. Doc. 31-3, Table of Authorities, Rec. Doc. 31-4, Statement of Undisputed Material Facts, and Rec. Docs. 31-5 through 31-28, evidentiary exhibits filed in the record.

responds to Plaintiff's denials and qualifications to the School Board's Statement of Undisputed

Facts, as follows:

1.     Plaintiff applied for and was hired as a day by day substitute with the School Board on or about August 20, 2018 (Rec. Doc. 31-1, Memorandum in Support of Motion for Summary Judgement (hereinafter "Memo"), p.1; Rec. Doc. 31-5, Exh. A, Plaintiff's Application; Rec. Doc. 31-6, Exh. B, Payroll Status Form; Rec. Doc. 31-7, Exh. C, Declaration of Alicia Morris, Clerk/Administrative Assistant in Department of Human Resources, St. Mary Parish School Board (hereinafter "Morris Declaration"),¶ 2 ).

       **Undisputed.**

2.     Alicia Morris, Administrative Assistant/Clerk informed Ms. Coulon of the temporary nature of substitute positions, both day-to-day and long-term, as was her ordinary practice with all newly hired substitutes (Rec. Doc. 31-1, Memo, pp. 2-3; Rec. Doc. 31-7, Exh. C, Morris Declaration, ¶ 3; *See also* Rec. Doc. 31-9, Exh. E, Declaration of Debra McClarity, Director of Special education, ¶¶ 4-6).

       Disputed.

       **School Board Response:**

       There is no competent evidence in the record that would enable reasonable fact-finder to determine Plaintiff was unaware of the temporary nature of substitute positions, whether long-term or short term.

       Specifically responding to Plaintiff's arguments, the School Board would first show that Plaintiff wholly misstates the testimony of Mr. Fabre.  Plaintiff states Mr. Fabre shared her belief that she had been hired for the entirety of the school year.   Reviewing the cited testimony in its entirety controverts Plaintiff's contention.   The entire quoted testimony reads as follows:

              10  Q. Okay, it says, "She is asking if she will
              11  be returning to us this year." Was she --
              12  is she as a long-term sub hired on a yearly
              13  basis or a semester basis or how does that
              14  work?
              15  A. That would probably be a question for
              16  Mrs. Bergeron. I would assume that unless
              17  there were any issues, she would be with us
              18  for the -- for the year. Like I said,
              19  that's typically how it would be for a
              20  teacher as well unless a Certified Teacher
              21  came in to bump them or something, but like
              22  I said, they would typically be with us for
              23  the whole year.
              24  Q. Okay. For the whole school year?

2

25  A. Yes, sir.

(Rec. <u>Doc. 31-10, p. 6</u>, Fabre deposition excerpt at p. 100, 11. 10-25).

First, it was clear that Mr. Fabre was only making assumptions as this was a question better left to someone with more knowledge, such as the Director of Human Resources.  Second, in considering the example of a long-term substitute teacher, he clearly articulated his understanding that a long-term substitute would be in place for the year unless they were bumped by a certified teacher.  This supports other facts contained herein that long-term substitutes remain in place until the permanent employee returns, or a permanent person is hired

Second, Plaintiff implies that Ms. Morris' testimony should not be considered because she was "not disclosed" prior to the filing of the Motion for Summary Judgement.  However, there was and is no reason to disclose Ms. Morris as Plaintiff disclosed her as a person with knowledge in her responses to Interrogatories (Rec. <u>Doc. 35-6, p. 3</u>).  While Plaintiff did not include her last name, she identified "Alicia" with Human Resources who would have knowledge of her employment and (alleged) termination.  Alicia Morris is the only "Alicia" who worked in the Department of Human Resources.  (Exhibit T, ¶ 4 "Declaration of Susan Bergeron, Department of Human Resources).  Furthermore, Plaintiff cannot claim any surprise as she was well acquainted with Ms. Morris, having recorded a conversation with her in an apparent attempt to coax Ms. Morris into telling her she had been terminated when, in fact, there were simply no other paraprofessional positions available in the district at that time. (Exhibit U, Recording submitted by Plaintiff in discovery; Rec. <u>Doc. 35-6, p. 25</u>, Response to Interrogatory No. 21)).

The School Board would finally note that Ms. Coulon admits that she applied for a position as a substitute and was hired for the position of a substitute (See response to School Board's Statement of Undisputed Facts, Record Document 35-1, No. 1).  It simply belies common sense that an individual would apply for a substitute position with the expectation that any one job, whether considered long-term or day-to-day, would be permanent, even for a single school year.

As such, there is no *genuine* issue of material fact that would overcome the School Board's Motion for Summary Judgement.

3.     Day-to-day substitutes may be placed in long-term substitute positions when a need is identified by school principals. *Id.*

**<u>Undisputed.</u>**

4.     Principals must obtain approval from Ms. Debra McClarity, Director of Special Education, with respect to long-term substitute paraprofessional substitute positions. *Id.*

**<u>Undisputed.</u>**

5.  If Ms. McClarity determines it is necessary, she determines who is placed in the position. Ms. McClarity will consider recommendations from principals if they have such a recommendation (Rec. <u>Doc. 31-1</u>, Memo, p. 2; Rec. <u>Doc. 31-7</u>, Exh. C, Morris Declaration, ¶ 4-6).

**<u>Undisputed.</u>**

6.  Day-to-day substitutes may also become long-term substitutes automatically if they are working in the same position for over 21 consecutive school days (Rec. <u>Doc. 31-1</u>, Memo, p. 2; Rec. <u>Doc. 31-7</u>, Exh. C, Morris Declaration, ¶ 5).

**<u>Undisputed.</u>**

7.  Any time a day-to-day substitute is converted to a long-term substitute, their name is removed from the list that principals use on a day-to-day basis as short-term needs arise (Rec. <u>Doc. 31-1, p. 2</u>; Rec. <u>Doc. 31-7</u>, Exh. C, Morris Declaration, ¶ 6; Rec. <u>Doc. 31-8</u>, Exhibit D, Deposition Excerpt of Suzanne Bergeron, Director of Human Resources, as Rule 36(b) deponent, pp. 87, ll. 12-25 - 88, ll. 2-14 (hereinafter "30(b)(6) deposition excerpt").

Disputed.

**<u>School Board Response:</u>**

Plaintiff incorrectly states that the School Board provided no support for this statement of fact. Please see the specific record citations above citing to the evidence in support of this fact as cited in the School Board's Memorandum. Furthermore, here too Plaintiff misstates and mischaracterizes witness testimony. Ms. Bergeron, the 30(b)(6) deponent testified that they typically updated the list in the summer, and she went on to state that they tried to keep the list updated at all times (Rec. <u>Doc. 35-4</u>, Plaintiff's Exhibit A, 30(b)(6) deposition excerpt, pp. 39, ll. 425 – 40, ll. 1-16).[2]

By way of further clarification, any time a day-to-day substitute is converted into a long-term substitute, their name is removed from the list that principals use on a day-to-day basis as short-term needs arise. For the long term substitute, they will continue in that role and at that location until the need for the long-term substitute ends. (Rec. <u>Doc. 31-7</u>, Exhibit C, Morris Declaration, ¶ 6). As previously stated, a long-term substitute position lasts until the individual whose position was being covered returns, or until an individual with the necessary qualifications and/or certifications is hired for positions that vacant and being covered by substitutes. It is possible for a day-to-day substitute to turn into a long-term substitute, but there are no guarantees such will continue as availability fluctuates (Rec. <u>Doc. 31-7</u>, Exhibit C, Morris Declaration, ¶ 7; Rec. <u>Doc. 31-8</u>, Exhibit D, Deposition Excerpt of Suzanne Bergeron, Director of Human Resources, as Rule 36(b) deponent, pp. 87, ll. 12-25 -

---

[2] Please see also attached Exhibit V, Deposition of Suzanne Bergeron. its entirety. Because of Plaintiff's numerous misstatements of testimony, having the document in its entirety rather than selected portions will likely be more convenience to the Court.

88, ll. 2-14).   If neither of those things happen during the school year, then the long-term substitute position ends on the last day of the school year. (Rec. Doc. 31-8, Exhibit C, Morris Declaration, ¶ 7).  Once the long-term substitute position ends, the individual is automatically placed back onto the day-today substitute list such that they may be called out for short term needs. (Rec. Doc. 31-8, Exhibit C, Morris Declaration, ¶ 8).

8.     For the long-term substitute, they will continue in that role and at that location until the need for a long-term substitute is over.  *Id.*

**Undisputed.**

9.     It is Ms. McClarity's responsibility to determine how many special educations paraprofessionals are needed at each school at any given time based on the number of special education students and level of need.   Paraprofessionals are paid through funds specifically designated for students with disabilities by the federal government, and Ms. McClarity  must be able to show justification for expenditures of those federal funds.  As such, it is very important that the number of allotments determined for any given school not be exceeded without justification (Rec. Doc. 31-1, pp. 2-3; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 6).

**Undisputed with qualification.**

**School Board Response:**
Plaintiff admits that the facts as stated herein are not disputed, and only challenges what she deems to be "opinion" and not fact, specifically, how "important" it is for the School Board not to exceed the funding allotted for paraprofessionals.  The School Board would note that the importance of such is more than mere opinion.  It is an undisputed fact that Ms. McClarity must be able to show justification to the federal government regarding this expenditure of funds, and while the level of importance may not be a material issue, the fact that it bears some importance is clear on its face.  .

10.    Depending on needs of students and available full-time employee paraprofessionals, it is Ms. McClarity's responsibility to determine how many substitute paraprofessionals are needed and how many full-time, permanently hired paraprofessionals are needed at each individual school-site (Rec. Doc. 31-1, Memo, p. 3; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 5; Rec. Doc. 31-8, Exh. D,  Rule 30(b)(6) deposition excerpt, pp. 29, ll. 17-25 - 32, ll. 1-23).

**Undisputed with qualification.**

**School Board Response:**
The fact that Ms. McClarity is responsible for this determination is undisputed. Plaintiff qualifies this admission by noting that it is the School Board's responsibility through Ms. McClarity.  To clarify, the Superintendent of Schools is selected by the School Board to act on its behalf, and the Superintendent hires and assigns employees to the various positions, including Ms. McClarity.

11.    All substitute paraprofessionals are hired as day-to-day substitutes, and some are placed in positions as long-term substitute paraprofessionals for various reasons.  For example, a long-term substitute may be placed in a classroom to substitute for a permanent paraprofessional who is out on leave.  Or a substitute could be placed into a vacant position until an individual with the required certification is hired.  *Id.*

**Undisputed.**

12.    Long-term substitute positions are not for any specified period and are subject to end at any time, lasting until the individual whose position was being covered returns, or until an individual with the necessary qualifications/certifications is hired for positions that are vacant.  If neither of these things happen during the school-year, the long-term position ends upon the last day of that year (Rec. <u>Doc. 31-1</u>, Memo, p. 3; Rec. <u>Doc. 31-7</u>, Exh. C, Morris Declaration, ¶ 7; Rec. <u>Doc. 31-8</u>, Exh. E, McClarity Declaration, ¶ 6).

**Undisputed with qualification.**

**School Board Response:**

Plaintiff admits this fact and qualifies it by referring to response to material fact No. 2.  It is presumed that what Plaintiff disputes is whether or not she was aware of the temporary nature of being a substitute.  Please see the School Board's Response to material fact No. 2 above.

13.    Once the long-term position has ended, the individual is automatically moved back to the day-to-day substitute list such that they may be called out for short-term needs (Rec. <u>Doc. 31-1</u>, Memo, p. 3; 31-7, Rec. <u>Doc. 31-8</u>, Exh. C, Morris Declaration, ¶ 8).

Disputed.

**School Board Response:**

See School Board Response to undisputed material facts No. 2 and 7 above.  In further responding,  the record is clear that long-term substitutes are not hired for a specific amount of time.  (Rec. <u>Doc. 31-8</u>, Exhibit D, Deposition of Suzanne Bergeron).  The long-term subs work in a position only until a certified employee comes into the position-whether the certified employee is returning to the position or a new employee is hired. (Exhibit C, Declaration of Morris, ¶ 8).

14.    In January of 2018, a Licensed Professional Nurse (LPN) Paraprofessional retired from her position at Morgan City High School, and Ms. Coulon was assigned as a long-term substitute in that position as they searched for another LPN Paraprofessional for the permanent position, where Ms. Coulon remained throughout the remainder of the 2018-2019 school-year (Spring 2019 semester) (Rec. <u>Doc. 31-1</u>, Memo, pp. 3-4; Rec. <u>Doc. 31-10</u>, Exh. F, Deposition Excerpt of Mickey Fabre, Principal of Morgan City High School (hereinafter

"Fabre deposition excerpt), p. 98, ll. 12-25 to 100, ll. 1-6; Rec. Doc. 31-11, Exhibit G, email from Mr. Fabre identified as "Exhibit 7" to Fabre deposition).

Disputed.

**School Board Response:**

Plaintiff disputes that searches for LPNs were conducted prior to her complaint of harassment; however, she challenges this fact on mere speculation and a misstatement of Ms. Bergeron's testimony to imply there was no "active" search going on.  Plaintiff admits that Ms. Bergeron testified searches are ongoing but attempts to discredit her by incorrectly summarizing Ms. Bergeron's testimony.  However, looking at Ms. Bergeron's cited testimony in its entirety, there is no credible evidence whatsoever to refute this statement of fact.  The evidence is clear that the district actively searches for LPNs as they are in short supply, and the departments in charge of these searches are the Department of Nursing and the Department of Special Education.  Specifically, the LPNs in question were brought to the attention of Ms Bergeron by Mr. Stephen Harris, and Ms. Bergeron did not know how *he* came to obtain their applications (Exhibit T, ¶ 8, Declaration of Suzanne Bergeron); Exhibit V, 30(b)(6) deposition, pp. 125, ll, 14-25 – 131, ll. 1-14; Exhibit W, email dated November 18, 2019 referenced in witness testimony (identified as Exhibit 8 to deposition)).  Plaintiff questions the timing of hiring the LPNs; however, if there was a question about how these individuals came to be hired, the persons to ask would have been Mr. Harris and/or Ms McClarity, particularly after Ms. Bergeron referenced them in her deposition.  Neither of these individuals were deposed, and this speculative guesswork cannot be now used as credible evidence to dispute the facts surrounding the hiring of the two LPNs.

15.   There is one self-contained classroom at Morgan City High School, taught by Ms. Marilyn Guarisco.  This class has students with significant disabilities, some with medical needs.  A self-contained setting is one where the students remain in that class for the entirety of the school-day due to having significant cognitive and/or physical needs.   The students learn a modified curriculum based upon their specific needs as determined by their Individual Education Plan (IEP) (Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶¶  7-8).

Disputed.

**School Board Response:**

Plaintiff disputes only that Ms. Guarisco taught the only "self-contained" classroom citing to Ms. Guarisco using that term for Ms. Gaspard's classroom in her deposition.  First, whether Ms. Gaspard's classroom was self-contained, or a combined setting is immaterial.  Technically speaking, and as was in undisputed by Plaintiff, is that Ms. Gaspard teaches a combined setting where some students with significant needs remain in the class all day, and others move out into a resource room for part of the day, thus the term "combined" setting.  Regardless, there is no dispute as to the student make-up of these classrooms (Rec. Doc. 35-1, pp. 4-5, Plaintiff's Response to Statement of Undisputed Facts 16, 17, and 18).

.

16.     There is also a combined setting at Morgan City High School, taught by Ms. Sabrina Gaspard.  These students are higher functioning than those that are in Ms. Guarisco's classroom but still have significant needs.  The students in Ms. Gaspard's class attend part of the day in a self-contained classroom and one to two periods per day in the special education resource classroom (Rec. Doc. 31-1, Memo. p. 4; Rec. Doc. 31-12, Exh. H, Declaration of Sabrina Gaspard, Special Education Teacher (hereinafter "Gaspard Declaration"), ¶¶ 3-6 and 8-9; Rec, Dic, 31-13, Exh.  I, Deposition Excerpt of Marilyn Guarisco, Special Education Teacher at Morgan City High School (hereinafter "Guarisco deposition excerpt," pp. 12, ll. 20-25 to 13, ll. 1-6).

        **Undisputed.**

17.     Ms. Coulon was shared between Ms. Guarisco and Ms. Gaspard (Rec. Doc. 31-1, Memo. p. 4; Rec. Doc. 31-12, Exh. H, Declaration of Sabrina Gaspard, Special Education Teacher (hereinafter "Gaspard Declaration"), ¶¶ 3-6 and 8-9; Rec, Dic, 31-13, Exh.  I, Deposition Excerpt of Marilyn Guarisco, Special Education Teacher at Morgan City High School (hereinafter "Guarisco deposition excerpt," pp. 12, ll. 20-25 to 13, ll. 1-6).

        **Undisputed.**

18.     The students in the resource classroom are learning a traditional High School curriculum with modifications and accommodations per an Individual Education Program (IEP) developed for each student.  The content of the resource classroom is much more rigorous than in the self-contained classroom due to higher levels of student functioning (Rec. Doc. 31-1, Memo, p. 4; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 9; Rec. Doc. 31-12, Exh. H, Gaspard Declaration, ¶ 3).

        **Undisputed.**

19.     The resource special education classroom has the most high-functioning students, and all students receive some services in regular education classrooms (Rec. Doc. 31-1, Memo, p.5; Rec. Doc. 31-9, Exh.  E, McClarity Declaration, ¶ 10; Rec. Doc. 31-8, Exh.  D, 30(b)(6) deposition excerpt, p. 29, ll. 17-24 (explaining the difference between full-time paraprofessionals and substitute paraprofessionals).

        **Undisputed with qualification.**

        **School Board Response:**

        Plaintiff incorrectly states that the School Board provided no support for this statement of fact.  Please see the specific record citations in Fact No. 19 above citing to the evidence in support.  Because it is supported by record evidence this is undisputed.

20.     The School Board has one paraprofessional assigned to resource, Ms. Beverly Morris, who provides services to students both in the special education resource classroom and to students as they attend regular classes, pursuant to their IEPs.  Ms. Morris is a full-time

employee with the proper certifications and experience to provide the type of assistance being provided to these students. *Id.*

**Undisputed with qualification.**

**School Board Response:**

Plaintiff incorrectly states that the School Board provided no support for this statement of fact.  Please see the specific record citations in Reply to Response to Statement of Undisputed Facts No. 20 above citing to the evidence in support.  Because it is supported by record evidence this is undisputed.

21.    During the 2018-2019 and 2019-2020 school years, Ms. McClarity allotted three (3) paraprofessionals to Morgan City High School, with one (1) assigned to the self-contained classroom all day (Ms. Kinchen), one assigned primarily to Ms. Gaspard's classroom and who would provide some assistance to Ms Guarisco throughout the day (Ms. Coulon), and the third to work with the more high-functioning students (Ms. Morris) (Rec. <u>Doc. 31-1</u>, Memo p. 5, Rec. <u>Doc. 31-9</u>, Exh. E, McClarity Declaration, ¶ 11).

**Undisputed with qualification.**

**School Board Response:**

Plaintiff incorrectly states that the School Board provided no support for this statement of fact.  Please see the specific record citations in Reply to Response to Undisputed Material Fact No. 19 above citing to the evidence in support.  Because it is supported by record evidence this fact is undisputed.

22.    Throughout that time-period, the Office of Special Education was seeking to hire two (2) Licensed Professional Nurses (LPN) paraprofessionals for Ms. Guarisco's and Ms. Gaspard's classrooms. *Id.*

**School Board Response:**

See Reply to Plaintiff's Response to Statement of Undisputed Facts No. 14 above. It can be further clarified that regardless of whether one or two LPNs had been hired, once any paraprofessional was placed into Ms. Gaspard's classroom, Ms. Coulon's placement at Morgan City High School would come to an end to ensure compliance with policy regarding paraprofessional allotment. (Exhibit E, Declaration of Debra McClarity, ¶. 24).

23.    Ms. Coulon served as a long-term substitute paraprofessional at Morgan City High School during the Spring semester of the 2018-2019 school year, and for a portion of the Fall semester during the 2019-2020 school year, assigned primarily to Ms. Gaspard's classroom

and to provide assistance to Ms. Guarisco's students, until an LPN could be hired (Rec. Doc. 31-1, Memo p. 5, Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 13).[1]

**Undisputed.**

24.    During the Spring semester of 2019, Ms. Coulon got along well with her co-workers and they quickly became friends (Rec. Doc. 31-1, Memo pp. 5-6; Rec. Doc. 31-10, Exh. F, Fabre Deposition, pp. 34, ll. 13-25 - 35, ll. 1-20; Rec. Doc. 31-12, Exh. H, Gaspard Declaration, ¶¶ 12-14; Rec. Doc. 31-10, Exh. F, Fabre Deposition, pp. 67, ll. 1-25 - 68, ll. 1-7; Rec. Doc. 31-14, Exh. J, Declaration of Nakiya Allen, Teacher at Morgan City High School (hereinafter "Allen deposition excerpt);  ¶¶ 4-5; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 18; Rec. Doc. 31-13,  Exh. I, Guarisco Deposition, pp. 91, ll. 15-30 - 92, ll. 1-3; Rec. Doc. 31-15, Exh. K, Deposition of Shantel Kinchen, Paraprofessional, St. Mary Parish School Board ("hereinafter Kinchen deposition excerpts"), p. 9, ll 6-9); Rec. Doc. 31-16, Exh. L, Declaration Excerpts of Patrina Coulon with attached exhibits (hereinafter "Coulon deposition excerpts") , pp. 156 ll. 24-25 - 160, ll. 1-10, depo exhibit SB-8; pp. 160, ll. 1-25 - 161, ll. 1-8, depo exhibit SB-10; pp. 161, ll. 8-25 - 162, ll. 1-4, depo. exhibit SB-9; pp. 162, ll. 5-25 - 163, ll. 1-19, depo exhibit SB-11; pp. 165, ll. 1-25 - 166, ll. 1-7, depo exhibit SB-12; pp. 166, ll. 8-13 - 168, ll. 1-10, depo exhibit SB-13; pp. 168, ll. 10-25 - 170, ll. 1-15, depo exhibit SB-14; p. 170, ll. 16-25 depo exhibit 15; pp. 171, ll. 5-25 - 173, ll. 1-10, depo exhibit SB-16(A), (B), and (C); pp. 174, ll. 16-25 - 175, ll. 1-4, depo exhibit SB-17; pp. 175, ll. 5-18, depo exhibit SB-18.  Please note that deposition exhibits identified as SB-7 (Rec. Doc. 31-17), SB-12 (Rec. Doc. 31-18), and SB-16(A) (Rec. Doc. 31-19), SB-16(B) (Rec. Doc. 20), and SB-16(C)(Rec. Doc. 31-21)  could not be included as an attachment to the deposition as the undersigned was unable to convert to PDF.  As such, these exhibits were filed into the record as separate documents.

Disputed.

**School Board Response:**

Plaintiff incorrectly states that the School Board relied solely on impressions from third parties and testimony of alleged harassers, failing to address the plethora of documentary evidence that supports the fact that these were a group of friends (see record citations above).  While Plaintiff claims she participated in text messages and went on outings with the group in fear of retaliation, it belies common sense that she would also engage in unsolicited communications, for example – sending a text message stating "[y]ou and Gee [Ms. Guarisco] are the best.  I couldn't ask God to place me in a better working place." (Rec. Doc. 31-1, Memo p. 11; Rec. Doc. 31-16, Exh. L, Coulon deposition excerpts, pp. 174, ll. 16-25 - 175, ll. 1-4; deposition exhibit 17 (at Rec. Doc. 31-16, p. 47)).

---

[1] The undersigned made an error in the footnotes and neglected to cite to McClarity Declaration, ¶ 13; however, the statement is clearly supported by said declaration.

See reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.  The text messages and photographs speak for themselves.

25.     Ms. Coulon voluntarily participated in text messages with the group, some of which were colorful.  *Id.*

Disputed.

**School Board Response:**

Frist, Plaintiff incorrectly states that the School Board provided no support for this statement of fact.  Please see the specific record citations in Reply to Response to Undisputed Material Fact No. 24 above citing to the evidence in support.  In response to Plaintiff's assertion that her participation in colorful text messages was involuntary, see Reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.

26.     As an LPN had not yet been hired for the Fall of 2019, Mr. Fabre recommended that she return because she meshed so well with her colleagues, and Ms. McClarity approved (Rec. Doc. 31-1, Memo, p. 5; Rec. Doc. 19,  Exh. F, Fabre deposition excerpts, pp. 34, ll. 13-25 - 35, ll. 1-20).

Disputed in part.

**School Board Response:**

Plaintiff disputes that one of the reasons Mr. Fabre recommended her return was that she meshed so well with her colleagues; however, Mr. Fabre's own testimony shows otherwise:

> 13 A. She ended up meshing well with our faculty,
> 14 and so she just continued with us.

Rec. Doc. 31-10, Exh. F, Fabre deposition excerpts, pp. 34, ll. 13-25.

27.     Numerous witnesses testified that Ms. Coulon and her co-workers were more than mere colleagues, but that they were friends (Rec. Doc. 31-1, Memo pp 4-5; See Examples: Rec. Doc. 31-12, Exh. H, Gaspard Declaration, ¶¶ 12-14; Rec. Doc. 31-10, Exh. F, Fabre Deposition, pp. 67, ll. 1-25 - 68, ll. 1-7; Rec. Doc. 31-114, Exh. J, Allen deposition excerpts, ¶¶ 4-5; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶ 18; Rec. Doc. 31-13,  Exh. I, Guarisco Deposition, pp. 91, ll. 15-30 - 92, ll. 1-3; Exh. K, Kinchen deposition excerpt, p. 9, ll 6-9.

Disputed in part.

**School Board Response:**

See reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.  See reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.  The text messages and photographs speak for themselves.

28.     Ms. Coulon testified to engaging in group activities with her co-workers in the manner that friends do - going to the movies, out to dinner, exercising together, engaging in numerous text communications with the group, sending pictures of herself in various outfits or with a new hair style, sending pictures of herself in Jamaica, sending pictures of eating crawfish and engaging in jokes regarding sucking the heads, and accepting (and later showing off) outfits given to her by one of the alleged harassers, Shantel Kinchen (who also happened to be her cousin).  See: supporting documents cited at Statement of Fact Number 24, above.

Disputed in part.

**School Board Response:**

See reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.  The text messages and photographs speak for themselves.

29.     Ms. Coulon had a history of accepting clothing from Shantel Kinchen that Shantel no longer needed.  One lingerie item was given to her by Ms. Kinchen, which Ms. Coulon accepted (Rec. Doc. 31-1, Memo p. 6; Rec, Doc. 31-16, Exh. L, Coulon deposition excerpts, pp. 58, ll. 7-25 - 59, ll. 1-3; pp. 64, ll. 2-25 - 65, ll. 1-8; pp. 168, ll. 10-25 - 170, ll. 1-15, depo exhibit SB-14 (at Rec. Doc. 31-16, pp. 41-47, depo exhibit SB-15 (at Rec. Doc. 31-16, p. 48).

See reply to Plaintiff's Response to Statement of Undisputed Facts No. 24 above.  The text messages and photographs speak for themselves.  In further answering,

30.     Plaintiff did not file a complaint of harassment until *after* a disciplinary conference was held to address Ms. Coulon's altercation with one of the special education teachers, Ms. Sabrina Gaspard, that occurred on October 23, 2019 (Rec. Doc. 31-1, Memo pp. 6-7; Rec. Doc. 31-22, Exh. M, Reprimand with attached statement of P. Coulon and S. Gaspard dated October 25, 2019; Rec. Doc. 31-23, Exh. N, Plaintiff's handwritten complaint of harassment dated October 28, 2019 ("complaint")).

Undisputed with qualification.

**School Board Response:**

Plaintiff disputes to the extent this statement reads any significance into the timeline.  While that is not a fact, the School Board would refer argument related to the significance of the timeline in its Reply Brief.

31.     After being asked to return as a special education paraprofessional in the Fall because she had done well the year prior, things quickly deteriorated.  Ms. Coulon's support in Ms.

12

Gaspard's class became sporadic, starting with her having to take off of work for various doctor's appointments or other matters.  Then, when she was at school, she would avoid coming to Ms. Gaspard's classroom, preferring to stay in Ms. Guarisco's classroom, despite that fact that she was supposed to provide services in Ms. Gaspard's classroom in accordance with a schedule (Rec. Doc. 31-1, Memo pp. 6-7; Rec. Doc. 31-12, Exh. H, Gaspard Declaration, ¶¶ 15-24; Rec. Doc. 31-22, Exh. M, reprimand with attached statements).

Disputed.

**School Board Response.**

Plaintiff contests this statement bur fails to provide any specific reason for the contest, other than incorrectly stating that the School Board provided no support for this statement of fact. Please see the specific record citations in Fact No. 31 above citing to the evidence in support.  Because it is supported by record evidence this should be undisputed.

32.    It became a hardship for Ms. Gaspard as the students in her class were not getting the support that they needed, culminating in a verbal altercation between Ms. Gaspard and Ms. Coulon on October 23, 2019.  *Id.*

Disputed.

**School Board Response.**

Plaintiff contests this statement bur fails to provide any specific reason for the contest, other than incorrectly stating that the School Board provided no support for this statement of fact. Please see the specific record citations in Reply to Plaintiff's Response to Statement of Undisputed Fact No. 31 above citing to the evidence in support.  Because it is supported by record evidence this should be undisputed.

33.    On that day, in front of students, Ms. Coulon yelled at Ms. Gaspard and stated that she did not want to work with Ms. Gaspard or with those "types of kids."  The students were visibly upset and Ms. Gaspard asked Ms. Coulon to leave her room.  *Id.*

**School Board Response.**

Plaintiff contests this statement bur fails to provide any specific reason for the contest, other than incorrectly stating that the School Board provided no support for this statement of fact. Please see the specific record citations in Reply to Plaintiff's Response to Statement of Undisputed Fact No. 31 above citing to the evidence in support.  Because it is supported by record evidence this should be undisputed.

34.    Ms. Gaspard was admittedly angry, and after the incident, both parties were asked to write a statement for review by the school-site administrator and were issued a written reprimand. *Id.*

**Undisputed.**

35.  Ms. Coulon's statement described various complaints about working with the involved teacher but made no mention whatsoever of sexual harassment.  *Id.*

**Undisputed.**

36.  A disciplinary conference was held with both parties, and Ms. Coulon was warned about the importance of maintaining professionalism, going to assigned classes at assigned times, and improper  utilization of her cell-phone during instructional time.  The involved teacher was also issued a similar disciplinary conference form (Rec. Doc. 31-1, Memo pp. 7-8; Rec. Doc. 31-12, Exh. H, Gaspard Declaration, ¶¶ 15-24; Rec. Doc. 31-22, Exh. M, reprimand with attached statements; Exh. 31-10,  Exh. F, Fabre Deposition, p. 33, ll. 2-6).

**Undisputed.**

37.  Ms Coulon informed Mr. Fabre at that meeting that she did not want to go back into the special education classroom (Rec. Doc. 31-1, Memo, p. 8; Rec, Doc. 31-16, Exh. L, Coulon deposition excerpts, pp. 99, ll. 2-25 - 100, ll. 1-8; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶¶ 14-15.

Disputed.

**School Board Response:**

Plaintiff disputes the characterization of this statement averring that she would have wanted to return to the classroom if the alleged harassment was addressed; however, at the meeting referenced in this statement of fact, Ms. Coulon had not yet made any claim of harassment, and thus could not have told Mr. Fabre that she would return if the alleged harassment was addressed.  Furthermore, in her written statement with respect to the altercation between her and Ms. Gaspard, Plaintiff stated she asked Ms. Guarisco ". . . can I please go talk to Mr. Fabre about getting me out of her class" (Rec. Doc. 31-22, Exhibit M, reprimand and statement).

38.  Mr. Fabre contacted Ms. McClarity so they could determine how staffing would need to be rearranged. *Id.*

**Undisputed.**

39.  It was not until that date, October 28, 2019,  that Ms. Coulon brought a complaint of sexual harassment (Rec. Doc. 31-1, Memo p. 8; Rec. Doc. 31-23; Exh. N, Plaintiff's handwritten complaint).

**Undisputed.**

14

40.   In her Complaint to the Court, Plaintiff attributes this delay to being allegedly told by the Assistant Principal, Kim Caesar, that "white don't eat white and you'll be out the door" as she was purportedly headed to report the harassment to Mr. Fabre.  However, when asked about this during her deposition, Ms. Coulon testified that this conversation would have happened on *the same day* that Ms. McClarity came to discuss the altercation - October 28, 2019 - *after* she had been issued a written reprimand and *after* she had advised she did not want to remain in the special education classroom.  Therefore, even if such a conversation occurred (which is at all times denied), it could not have delayed her reporting as she earlier alleged (Rec. <u>Doc. 31-1</u>, Memo p. 8; Rec. <u>Doc. 15</u>, Plaintiff's Amended Complaint, p. 10, ¶ 40; Rec. <u>Doc. 31-16</u>, Exh. L, Coulon deposition excerpts, pp. 100, ll. 9-25 - 101, ll. 1-2.).  Undisputed with qualification.

Undisputed with qualification.

**School Board Response:**

Plaintiff disputes the statement hat she "did not want to remain in the special education classroom."  The remaining facts are undisputed.  With respect to the qualification, see Reply to Response to Statement of Undisputed Fact No. 37.

41.   Plaintiff submitted a number of colorful text messages and photographs in support of her allegation, further making claims about alleged poor treatment of special educations students (Rec. <u>Doc. 31-1</u>, Memo p. 9;  Rec. <u>Doc. 31-23</u>; Exh. N, Plaintiff's handwritten complaint).

**Undisputed.**

42.   Plaintiff's allegations were fully investigated (Rec. <u>Doc. 31-1</u>, Memo, p.8; Rec. <u>Doc. 31-24</u>, Exh. O, Investigation Documents; Rec. <u>Doc. 31-9</u>, Exh. E, McClarity Declaraton, ¶¶ 15-19; Rec. <u>Doc. 31-8</u>, Exh. D, 30(b)(6) deposition excerpts, pp. 143,ll. 4-25 - 144, ll. 1-15).

Disputed.

**School Board Response:**

Plaintiff disputes that the matter was "fully" investigated because the full procedure was incomplete; however, the fact that a written determination was not sent to the parties is not material.  What is material and undisputed is that witnesses were interviewed, statements were taken, and a determination was made – i.e., that the alleged harassment could not be substantiated (See record citations above).

43.   As part the investigation Ms. Coulon submitted a set of text messages as purported evidence of the alleged harassment; however, during the investigation admitted that she had deleted all of her comments from the message threads before sharing with the school administrator.  *Id.*

While it is Mr. Fabre's and Ms. McClarity's contention that Plaintiff deleted the text messages, whether or not they were deleted (intentionally or accidentally) is immaterial.

What is material and undisputed is that the messages turned over were incomplete (Rec. Doc. 35-1, p. 9).

44.    Based on the interviews with witnesses it was clear to administration that Ms. Coulon's allegations were without merit.   The involved individuals, including Ms. Coulon, were all friends and Ms. Coulon was a willing participant in all conversations - whether of a sexual nature or otherwise. *Id.*

**Undisputed.**

45.    It was not until Ms. Coulon had her falling out with Ms. Gaspard and was issued a disciplinary conference report with respect to *her own* poor behavior that these allegations of harassment arose.  Furthermore, most, if not all, of the personal conversations occurred away from school, outside of school hours, and on the personal devices of all parties. *Id.*

Disputed.

**School Board Response:**

Plaintiff disputes this fact by statement that most if not all of the alleged harassment occurred in the classroom; however, that is not what this statement addresses.  Specifically, the majority of the personal conversations and text messages *which are documented in the record* occurred away from school, outside of school hours, and on the personal devices of the parties.

46.    Ms. Coulon requested that she not be placed back into the special education classroom, so it was up the school and Ms. McClarity to determine how staffing should be arranged (Rec. Doc. 31-1, Memo pp. 9-10; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶¶ 11-27).

Disputed.

**School Board Response:**

Plaintiff asserts that she would have preferred to return to Ms. Guarisco's classroom if the alleged harassment was addressed.  See Reply to Response to Statement of Undisputed Fact No. 37.  In further answering, the School Board would note that plaintiff states she would have preferred to return to *Ms. Guarisco's* classroom, not Ms. Gaspard's classroom, despite that fact that it is undisputed that Plaintiff's time was shared between both teachers (Rec. Doc. 35-1, Response to Statement of Undisputed Facts, No. 17).  Thus, removal from one is removal from both.

47.    At about that same time, Ms. McClarity had to undergo emergency surgery, and the matter was placed on hold until she was well enough to return.  In the interim, because Morgan City High School was allotted three (3) paraprofessionals, Mr. Fabre was able to retain Ms. Coulon at the school. *Id.*

Undisputed with qualification.

**School Board Response:**

The School Board does not dispute Plaintiff's qualification, i.e., that Ms. McClarity continued to do some amount of work at the hospital before returning.  This, this statement is **undisputed**.

48.  In late November or early December two LPN paraprofessionals were hired and the plan was to place them both at Morgan City High School.  Ms. McClarity was still out on leave, so Ms. Bergeron went to the school to notify both Ms. Kinchen and Ms. Coulon that their services at Morgan City High School were coming to an end. (Rec. Doc. 31-1, Memo p. 10; Rec. Doc. 31-9, Exh. E, McClarity Declaration, ¶¶ 11-27).*;* Rec. Doc. 31-7, Exh. C, Morris Declaration, ¶¶ 10-23.

The School Board does not dispute Plaintiff's qualification, i.e., that Ms. McClarity continued to do some amount of work at the hospital before returning.  This statement is **undisputed**.

49.  As a full-time permanent employee, Ms. Kinchen was notified that she would be transferred to another school.  *Id.*

**Undisputed.**

50.  There was no need for any additional long-term substitute paraprofessionals in the district at the time, so Ms. Coulon was placed back on a day-by-day substitute status.  *Id.*

See Reply to Response to Undisputed Material Fact No. 2, 7, and 13 above.

51.  Ms. Coulon was not fired or terminated from her employment and remained on the substitute list.  *Id.*[2]

See Reply to Response to Undisputed Material Fact No. 2, 7, and 13 above.

52.  According to Ms. Coulon the harassment began in January of 2019, when she had first been placed as a long-term substitute at Morgan City High School (Rec. Doc. 31-1, Memo pp. 10-11; Rec. Doc. 31-16, Exh. L, Coulon Deposition, pp. 59, ll. 12-25 - 61, ll. 1-12).

**Undisputed.**

52.  After her position ended at the end of that school-year, she continued to communicate with the group throughout the Summer.  *Id.*

---

[2] The undersigned neglected to include a footnote in the original memorandum to identify the same supporting documents as the prior footnote.  Reference is contained herein.

**Undisputed.**

53.     Subsequently, Plaintiff readily accepted the opportunity to return as a long-term substitute paraprofessional in the Fall of 2019 to be assigned to those same classrooms (Rec. Doc. 31-1, Memo, p. 11; Rec. Doc. 31-10, Exh. F, Fabre deposition excerpt, p. 34, ll. 13-14).

**Undisputed.**

54.     At the end of the 2018-2019 school-year, May 27, 2019, Ms. Coulon sent a text message stating "[t]hanks for having me in your class this school year and looking forward to seeing you next school year," with three different heart emojies (Rec. Doc. 31-1, Memo p. 11; Rec. Doc. 31-16, Exh. L, Coulon deposition excerpts, pp. 165, ll. 1-25 - 166, ll. 1-7; Rec. Doc. 31-18, deposition exhibit 12.

**Undisputed.**

55.     In response, Ms. Guarisco referred to Ms. Coulon, Ms. Kinchen, and herself as the "Three Musketeers." *Id.*

**Undisputed.**

56.     After continued communication over the Summer and agreeing to go back to the long-term substitute position, on September 24, 2019, approximately *one month before* Ms. Coulon made her allegation of sexual harassment, she sent a text message Ms. Kinchen stating "[y]ou and Gee [Ms. Guarisco] are the best.  I couldn't ask God to place me in a better working place." (Rec. Doc. 31-1, Memo p. 11; Rec. Doc. 31-16, Exh. L, Coulon deposition excerpts, pp. 174, ll. 16-25 - 175, ll. 1-4; deposition exhibit 17 (at Rec. Doc. 31-16, p. 47)).

**Undisputed.**

PLAINTIFF'S ALLEGED ADDITIONAL "MATERIAL FACTS" IN DISPUTE

Plaintiff states that in addition to the facts disputed as indicated above, she argues Defendant "neglected" to mention several other facts in the record which Plaintiff believes would be disputed. The School Board does not ignore the allegations as set forth below, but rather, were not specifically addressed because they are not undisputed.  However, the are  **immaterial** to the case at bar, as follows:

57. When Plaintiff's harassers accused Plaintiff of being drunk in a text message, Plaintiff responded with a picture of crawfish. Plaintiff's harassers then turned the conversation sexual by ridiculing Plaintiff's marital sex life. Ex. G.

**<u>Immaterial</u>**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

58. When Plaintiff's harassers texted Plaintiff to suck heads "until he is dry" they were taking advantage of a double entendre to refer to oral sex. Ex. G; Ex. F, Coulon Dep. at 182:22-183:9.

**<u>Immaterial</u>**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

59. Marilyn Guarisco used pickles to teach Plaintiff how to perform oral sex while in the classroom. Ex. G; Ex. F, Coulon Dep. at 72:4-20.

**<u>Immaterial</u>**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

60. Plaintiff's harassers used a banana to mime sexual acts in the classroom in an effort to make Plaintiff uncomfortable. Ex. F, Coulon Dep. at 73:25-75:14.

**<u>Immaterial</u>**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

61. Plaintiff's harassers used classroom items such as a telephone to mime sexual acts in the classroom in an effort to make Plaintiff uncomfortable. Ex. F, Coulon Dep. at 73:25-75:14.

**<u>Immaterial</u>**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

62. Plaintiff's harassers made comments about Plaintiff's breasts and nipples, which was particularly humiliating because they were protruding due to her thyroid cancer treatment. Ex. F, Coulon Dep. at 87:11-88:4.

**Immaterial**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

63. Plaintiff purchased and wore uncomfortable cotton rounds and gel pads to cover her nipples in an effort to avoid further harassment. Ex. F, Coulon Dep. at 87:11-88:4.

**Immaterial**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

64. Plaintiff's harassers discussed the penis size of various co-workers while in the classroom and in front of students. Ex. F, Coulon Dep. at 65:9-66:4.

**Immaterial**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

65. Plaintiff's harassers would grab each other's breasts and make other sexualized contact while in the classroom in front of students. Ex. F, Coulon Dep. at 153:18-154:12.

**Immaterial**.

The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

66. Plaintiff's harassers would call Plaintiff a "bitch" to her face. Ex. C at No. 8.

   **Immaterial**.

   The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

67. Plaintiff did not welcome the harassment. Ex. F, Coulon Dep. at 183:16-184:7.

   **Immaterial**.

   The School Board emphatically denies this statement of fact; however, , the fact of whether this allegation occurred exactly as described, Plaintiff *never* informed or even *implied* that the conversations and actions described in her lawsuit were unwelcome.  Thus, this statement is immaterial.

68. Plaintiff has suffered significant emotional damage as a result of the harassment and termination. Ex. F, Coulon Dep. At 184:24-185-18.

   There is no evidence in the record to show that Plaintiff suffered any emotional damages, but even if they did, this is not a fact to be determined on a motion for summary judgement.

**Respectfully submitted,** this the 11th day of June, 2022

      **HAMMONDS, SILLS, ADKINS & GUICE, LLP**
      2431 S. Acadian Thruway, Suite 600
      Baton Rouge, Louisiana   70808
      Telephone:      225/923-3462
      Facsimile:       225/923-0315

      *s/ Melissa S. Losch*
      **ROBERT L. HAMMONDS**
      Louisiana Bar Roll No. 6484
      **PAMELA WESCOVICH DILL**
      Louisiana Bar Roll No. 31703
      **MELISSA S. LOSCH, T.A.**
      Louisiana Bar Roll No. 26811
      **JOHN R. BLANCHARD**
      Louisiana Bar Roll No. 37036

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on the date stated below, a true and correct copy of the above and foregoing **STATEMENT OF UNDISPUTED FACTS** was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to Plaintiffs of record by operation of the court's electronic filing system.

**BATON ROUGE, LOUISIANA,** this 11th  day of June, 2022

_s/Melissa S. Losch_
MELISSA S. LOSCH
